I agree that the judgment is due to be reversed and the case remanded for a new trial, because of the court's refusal to charge the jury on the law of combining and concurring negligence. However, the majority does not stop there, but goes on to overrule — in a most summary fashion — American Legion Post No. 57 v. Leahey, 681 So.2d 1337
(Ala. 1996). It does so in order to invigorate Ala. Code 1975, §6-5-545, which was all but dead after this Court, only four years ago inLeahey, declared its counterpart, Ala. Code 1975, § 12-21-45, to be unconstitutional.
Section 12-21-45 provided in pertinent part:
 "(a) In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses."
Section 12-21-45 differs in no material respect from § 6-5-545. Essentially, they are the same provision, merely inserted in different chapters of the Code.
The essence of this Court's holding in Leahey was that § 12-21-45
was so incomprehensible as to be void for vagueness — i.e., it violated the equal-protection and due-process guarantees of the Constitution of Alabama. In that connection, we said:
 "Three aspects of the operation of § 12-21-45
weigh heavily against the argument that the statute is constitutional. *Page 234 
First and foremost, § 12-21-45 declares that collateral source evidence `shall be admissible as competent evidence,' but it does not declare what that evidence is competent to prove. The statute does not purport to change the law of damages or to declare what effect the jury may give to the collateral source evidence. If it is intended to give the jury the option of reducing the amount of proven medical and hospital expenses by the amount of the collateral source payment — as indeed it must be intended, if it does anything other than to declare irrelevant and unfairly prejudicial evidence to be `competent' evidence — is it then intended to require [emphasis in Leahey] the jury so to reduce its award? If so, why does it not say so? Was the legislature apprehensive that such a requirement would violate § 11? However, if the jury is not required to reduce the award by the amount of the collateral source payment, does the statute completely leave to the jury's discretion whether to award the full amount of the proven hospital and medical expenses, to award only the difference between those expenses and the plaintiff's collateral reimbursement, or to award some amount in between? If this is the intent, it seems that the legislature has given the jury unbridled discretion in the award of compensatory damages.
". . . .
 "We also agree with the point implied in Killian [v. Melser, 792 F. Supp. 1217 (N.D.Ala. 1992),] that the statute violates the due process guaranty by stating that collateral source evidence is `competent' without stating what it is competent to prove or what effect its admission will have. One approach to resolving this problem would be to hold simply that § 12-21-45 does not affect the law of damages, but only the law of evidence. Under such an approach, a court reviewing a verdict on a motion for new trial to determine whether the verdict was inadequate would simply apply the law as to special damages and set the verdict aside if the verdict was significantly below the undisputed amount of medical and hospital expenses. A jury is not free to disregard undisputed evidence of special damages and award an amount inadequate to compensate the plaintiff for injuries proximately caused by the defendant's negligence or other wrongful conduct. Thompson v. Cooper, 551 So.2d 1030 (Ala. 1989); Ex parte Patterson, 459 So.2d 883 (Ala. 1984) . . .; Cocke v. Edwards, 215 Ala. 8, 108 So. 857 (1926); Roland v. Krazy Glue, Inc., 342 So.2d 383 (Ala.Civ.App. 1977). Such a construction would effectively eviscerate § 12-21-45
and worsen its confusing effect because it would decidedly make the `competent' collateral source evidence immaterial, prejudicial, and confusing to the jury. In such an application, the statute would violate the plaintiff's right under §§ 6 and 13 of the Constitution to a remedy by due process of law.
 "On the other hand, if the Court were to attempt to save the statute by holding that it gives the jury discretion whether to reduce its award by the amount of the collateral source recovery or some portion thereof, a due process violation would arise from a different direction: the standardless submission to the jury of a complaint for compensatory damages. This violation is made more obvious by the fact that medical and hospital damages are special damages.
 "Finally, if the Court were to try to save the statute by reading it to require [emphasis in Leahey] the jury to reduce its award by the amount of the collateral source payment, except to the extent that the plaintiff is required to reimburse the collateral payor, then § 12-21-45 *Page 235 would still violate the due process guaranty because of its introduction of evidence that the plaintiff is insured without allowing evidence that the defendant is insured, thereby inherently undermining the fairness of the proceeding. This reading would violate not only the plaintiff's right to due process, but also the right of the plaintiff's insurer not to be deprived of its contractual subrogation rights without due process of law, because, as explained above, the lopsided introduction of insurance evidence would tend to cause the jury not to require the defendant to reimburse the plaintiff's insurer for an indemnity that the insurer has contracted to provide and for which it has received premiums."
681 So.2d at 1345-47 (emphasis added except where noted). Indeed, at least one federal court has agreed that "[t]he language of § 12-21-45," which is functionally identical to that of § 6-5-545, "is so incongruous and so self-contradictory as to be virtually unworkable and to invite an attack on the statute's constitutionality under the doctrine of `void for vagueness' as well as under `due process' scrutiny."Killian v. Melser, 792 F. Supp. 1217, 1218 (N.D.Ala. 1992). That court further stated:
 "[T]his court, to the extent it is capable of understanding § 12-21-45, concludes that the Alabama legislature intended no more than to permit an alleged tortfeasor to muddy the water by requiring the trial judge to allow the jury to listen to evidence that, in reality, is irrelevant and prejudicial, and which the trial court, as it later instructs the jury, must describe as having nothing whatsoever to do with the true calculation of the possible recoverable damages. This court has conducted no empirical survey of what Alabama trial judges are presently doing to prevent a defendant's closing argument from degenerating into an attempt by the defendant who has availed himself of § 12-21-45, to persuade the jury of the plaintiff's greed and of the immorality of a double recovery by the plaintiff for his medical expenses."
792 F. Supp. at 1219-20 (emphasis added). I agree with these observations.
"[A] standardless [statute] is subject to facial attack under the due process clause though the vagueness doctrine." Brockert v. Skornicka,711 F.2d 1376, 1381 (7th Cir. 1983). "A state's legislative enactment is void for vagueness under the due process clause of thefourteenth amendment if it `is inherently standardless, enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state.'" Margaret S. v. Edwards, 794 F.2d 994, 999 (5th Cir. 1986). This is so, because "a vague law lacks explicit standards for its application, and thus `impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.'" Brockert, supra, 711 F.2d at 1381 (quoting Grayned v.City of Rockford, 408 U.S. 104 (1972)). Otherwise stated, "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves . . . judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Giaccio v. Pennsylvania, 382 U.S. 399, 402-03
(1966).
Even outside the First Amendment context, a statute may be challenged as facially unconstitutional where it lacks an "`an unmistakable core that a reasonable person would know is forbidden by the law.'" *Page 236 United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk,Inc., 793 F. Supp. 1114, 1158 (E.D.N.Y. 1992) (quoting Kolender v.Lawson, 461 U.S. 352, 370-71 (1983) (White, J., dissenting)). That is this case. Section 6-5-545 has not the barest "core" that is clear to a person of ordinary intelligence, or, to anyone else, of whom I am aware. For example, Judge Acker has stated:
 "This court has held informal conversations with more than one Alabama trial judge on this subject and has learned that Alabama trial judges are routinely allowing the introduction of evidence rendered `admissible' by § 12-21-45 but thereafter charging the jury that it may `consider' [emphasis in original] the said evidence for whatever it may be worth. Such an ambiguous jury charge, while an understandable effort to comply with § 12-21-45, is tantamount to telling the jury that it can, with impunity, reduce any justifiable verdict by the amount of money plaintiff may receive from a collateral source, but that it need not do so, or, for that matter may punish a greedy plaintiff and give him nothing in an otherwise meritorious case. On the other hand, some Alabama trial judges are remaining silent on the subject and are simply ignoring § 12-21-45 in their jury instructions and then crossing their fingers. The fact that no suggested jury instruction on the subject can yet be found in Alabama Pattern Jury Instructions may provide an explanation for the latter approach. Meanwhile, the Supreme Court of Alabama has not spoken authoritatively on § 12-21-45."
Killian, 792 F. Supp. at 1220 (emphasis added except where noted). See also Craig v. F.W. Woolworth Co., 866 F. Supp. 1369, 1373 (N.D.Ala. 1993) ("Section 12-21-45 opens the door to chaos."), aff'd, 38 F.3d 573 (11th Cir. 1994).
Fortunately, this Court did speak authoritatively in Leahey, holding § 12-21-45 unconstitutional. Unfortunately, the majority today chooses to take the state back into the "chaos" and illegality that were the rule before Leahey. Section 6-5-545 is patently unconstitutional as violating both federal and state due-process guarantees.
Moreover, it violates the Equal Protection Clause of theFourteenth Amendment to the United States Constitution, as well as the equal-protection guarantees of the constitution of Alabama.[3] "While the due process and equal protection guaranties are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances." Opinion of the Justices, No.102, 252 Ala. 527, 530, 41 So.2d 775, 777 (1949).
Section 6-5-545 does not pass muster under even the least stringent of the three *Page 237 
levels of equal-protection analysis required by the United States Constitution. Under that analysis, the reviewing court must determine that there is a "`rational relationship between the disparity of treatment [the challenged statute creates] and some legitimate governmental purpose.'" Calloway v. District of Columbia, 216 F.3d 1, 8
(D.C. Cir. 2000) (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)).
Section 6-5-545 arbitrarily relegates plaintiffs to two distinct classes — those who have insurance and those who do not.
The purpose of the statute was to remedy a purported "unavailability of health care as a result of the rising cost of malpractice insurance."Moore v. Mobile Infirmary, 592 So.2d 156, 166 (Ala. 1991) (discussing Ala. Code 1975, § 6-5-544(b) (plurality). However, § 6-5-545
discriminates, in all the ways that were discussed in Leahey, against those who have insurance.
Only those who have had the foresight and the means wherewith to purchase insurance are subject to the vagaries of the statute. There is neither a rational basis, nor a legitimate governmental purpose, for this disparate treatment. Thus, it violates the Equal Protection Clause of the Fourteenth Amendment.
Four years ago, this Court provided the citizens of Alabama with a thorough, well-reasoned discussion of the issued raised by § 6-5-545, detailing the conflict between the statute and the constitution. The opinion issued by the Court today resurrects a statute that is constitutionally deficient, with neither an explanation for holding the statute constitutional nor a suggested procedure for implementing the statute. One need not be a soothsayer to foresee that the statute will require judicial amendment for implementation. For these reasons, I respectfully dissent from that portion of the main opinion holding §6-5-545 constitutional.
[3] In mentioning the equal-protection guarantee of the Alabama Constitution, I have not overlooked Ex parte Melof, 735 So.2d 1172 (Ala. 1999), which purports to hold that there is no such guarantee in the Alabama Constitution. I point out, however, that in special writings, no fewer than 5 of the 8 Justices participating in that decision expressed either their disagreement with, or no opinion as to, that proposition. See, e.g., 735 So.2d at 1194 ("Although the main opinion correctly states that there is no single, express equal-protection provision in the Constitution of Alabama . . ., I do not believe it follows that there can be no claim of denial of equal protection cognizable under the Constitution of Alabama") (See, J., concurring specially; joined by Brown, J.); id. at 1195 (Cook, J., dissenting from the proposition that the Alabama Constitution fails to guarantee the equal protection of the laws; joined by Kennedy, J.); id. at 1205 (Johnstone, J., "adopt[ing]" the special writing of Cook, J., as to the equal-protection issue).